| | |
|---|---|
| **DISTRICT COURT, CITY AND COUNTY OF DENVER STATE OF COLORADO**<br>1437 Bannock Street<br>Denver, Colorado 80202 | DATE FILED: May 23, 2017 2:00 PM<br>FILING ID: C31DAF42230E9<br>CASE NUMBER: 2017CV31894 |
| **Plaintiff**: CURT SAMSON, individual,<br><br>v.<br><br>**Defendant**: TWENTYEIGHTY, INC., a Delaware Corporation. | ▲   COURT USE ONLY   ▲ |
| Attorneys for Plaintiff:<br>JESTER GIBSON & MOORE, LLP<br>Brian Moore, #28763<br>Niki Schwab, #48060<br>1999 Broadway, Suite 3225<br>Denver, CO 80202      Email:  bmoore@jgllp.com<br>Phone: (303) 377-7888                nschwab@jgllp.com<br>FAX:  (303) 377-7075 | Case Number:<br><br>Division/Courtroom: |
| **COMPLAINT AND JURY DEMAND** ||

Plaintiff Curt Samson, by his attorneys, Jester Gibson & Moore, LLP, states as follows for his Complaint against Defendant TwentyEighty, Inc. ("TwentyEighty"):

### I. PARTIES, JURISDICTION AND VENUE

1. Mr. Samson is an individual and resident of the County of Jefferson, State of Colorado. Mr. Samson was employed by TwentyEighty as an Executive Vice President, through March 17, 2017.

2. TwentyEighty is a Delaware corporation whose principal place of business is located at 10509 Professional Circle, Suite 100, Reno, NV 89521. TwentyEighty's Colorado registered agent is located at 1560 Broadway, Suite 2090, Denver, CO 80202.

3. Venue is properly before this Court because effective service was made on TwentyEighty in the City and County of Denver.

### II. GENERAL ALLEGATIONS

4. TwentyEighty is a holding company which owns several subsidiaries, one of which is the Miller Heiman Group ("MHG").

5. Mr. Samson became employed by TwentyEighty on January 2, 2014. His position with TwentyEighty was Executive Vice President – International of MHG. During 2016, Mr.

# EXHIBIT A

Samson was responsible for managing MHG's operations and sales in Europe, the Middle East, and Africa ("EMEA").

6. Mr. Samson's compensation from TwentyEighty included both a salary and bonus component.

7. Mr. Samson's right to a bonus for calendar year 2016 was governed by a written 2016 Discretionary Bonus Plan Governing Document" ("2016 Bonus Document"). After some negotiation, TwentyEighty presented Mr. Samson with the final version of the 2016 Bonus Document on or about September 15, 2016, and Mr. Samson electronically signed that document shortly thereafter.

8. Pursuant to the 2016 Bonus Plan, along with other bonus opportunities, Mr. Samson was entitled to receive a bonus of $75,000 if MHG's EMEA region attained 100% of its target revenue of $19,600,000 in calendar year 2016. In addition, Mr. Samson was entitled to receive 2% of the amount by which MHG EMEA's revenues exceeded that threshold.

9. Mr. Samson remained employed by TwentyEighty past the end of 2016. Through his efforts, MHG EMEA attained revenues during 2016 in excess of $19,600,000.

10. Under the terms of the 2016 Bonus Plan, as of January 1, 2017, Mr. Samson had earned a bonus in the amount of $75,000 plus 2% of the amount by which MHG AMEA's revenues exceeded $19,600,000.

11. Mr. Samson's immediate supervisor was TwentyEighty's President, Byron Matthews.

12. In addition to and apart from the 2016 Bonus Plan, Mr. Matthews promised Mr. Samson that TwentyEighty would give him additional bonuses if Mr. Samson closed three larger accounts. Mr. Matthews had actual and apparent authority to act on behalf of TwentyEighty and bind it with respect to such matters.

13. Specifically, with respect to each of the Fletcher Building Products deal, the SABIC deal, and the Spectris deal, Mr. Matthews promised Mr. Samson that he would receive a Rolex watch, if he was able to close the deal.

14. Mr. Samson successfully closed each of these deals, respectively in the second quarter of 2015, the second quarter of 2016, and the third quarter of 2016.

15. When Mr. Samson followed up with Mr. Matthews regarding these Rolex watches, Mr. Matthews assured him that he would be "taken care of." However, TwentyEighty failed ever to deliver the promised watches, or their cash value, to Mr. Samson.

16. During September 2016, Mr. Matthews approached Mr. Samson and informed him that Mr. Samson's position was going to be eliminated. Mr. Matthews told Mr. Samson that TwentyEighty would provide him with a severance package, if he agreed to stay on board with TwentyEighty until December 31, 2016.

17. Mr. Matthews informed Mr. Samson that he had complete authority to negotiate a severance agreement with Mr. Samson. Mr. Matthews further stated that "your [Mr. Samson's] results have taken care of me [Mr. Matthews]; trust me, I will take care of you."

18. Mr. Matthews, on behalf of TwentyEighty, presented Mr. Samson with a proposed Severance Agreement ("SA"). Through the SA, TwentyEighty offered: severance in the amount of $90,125.04, which constitutes 26 weeks of Mr. Samson's salary; an additional $11,148.12 to be used for COBRA benefits, or any other purpose; and outplacement services. The SA also confirmed that Mr. Samson would be paid a bonus under the 2016 Bonus Plan, with the payment expected around March 31, 2017.

19. Before the SA was finalized and executed, Mr. Matthews asked Mr. Samson to remain on board with TwentyEighty beyond December 31, 2016. Mr. Matthews assured Mr. Samson that he would receive all of the agreed upon benefits in the SA even though TwentyEighty was changing Mr. Samson's separation date. Eventually, Mr. Matthews and Mr. Samson agreed that March 31, 2017 would be Mr. Samson's last day of employment.

20. Mr. Samson agreed to remain employed by TwentyEighty through March 31, 2017, in reliance on TwentyEighty's promise to provide him in exchange with severance benefits not less than those set forth in the SA.

21. When Mr. Samson inquired about the commissions on deals he would be closing in the first quarter of 2017, Mr. Matthews assured him that TwentyEighty would take into consideration Mr. Samson's contributions regarding first quarter commissions.

22. On January 19, 2017, Mr. Samson spoke with Mr. Matthews regarding, among other things, the accrual of Mr. Samson's 2016 bonus. Mr. Matthews informed him that his bonus was accrued by the company's finance department. Mr. Matthews also informed Mr. Samson his was the company's largest bonus.

23. On March 13, 2017, Mr. Matthews informed Mr. Samson that TwentyEighty's compensation committee was not happy with Mr. Matthews' promise to pay Mr. Samson six months' severance.

24. On March 17, 2017, TwentyEighty terminated Mr. Samson's employment. As reason for this termination, TwentyEighty alleged that Mr. Samson had engaged in certain misconduct. However, the actions upon which TwentyEighty relied were both previously known to and consented to by TwentyEighty.

25. TwentyEighty's true motivation for terminating Mr. Samson's employment was to create an excuse for not paying him severance.

26. Although Mr. Samson's 2016 bonus was earned, vested, and determinable on the date of his termination, TwentyEighty did not pay that bonus to Mr. Samson upon terminating his employment.

27. TwentyEighty has not paid to Mr. Samson the severance or other benefits contemplated by the SA and expressly promised to him.

28. Earlier in Mr. Samson's employment, TwentyEighty had a traditional paid-time-off policy, pursuant to which employees accrued paid time off at fixed rates. During Mr. Samson's employment, TwentyEighty switched to a flexible time off program, pursuant to which employees no longer accrued paid time off benefits.

29. At the time TwentyEighty changed its policy, Mr. Samson had accrued but not used 120 hours of paid time off.

30. TwentyEighty has withheld payment of Mr. Samson's accrued paid time off, all of which is due and owing.

### III. CLAIMS FOR RELIEF

#### FIRST CAUSE OF ACTION
**(Violation of the Colorado Wage Claim Act ("CWA"))**

31. Mr. Samson incorporates herein by this reference each of the foregoing paragraphs and allegations in this Complaint as if set forth fully herein.

32. As of the termination of Mr. Samson's employment with TwentyEighty, Mr. Samson's 2016 bonus was accrued, vested, and determinable, as were the additional bonuses promised on the Fletcher Building Products, SABIC, and Spectris deals (the "Additional Bonuses").

33. As of the termination of Mr. Samson's employment with TwentyEighty, he had accrued, but neither used nor been paid for, 120 hours of paid time off.

34. TwentyEighty failed to pay Mr. Samson his 2016 bonus, the Additional Bonuses, or for his accrued paid time off.

35. Mr. Samson timely made a written demand upon TwentyEighty for payment of his unpaid bonuses and accrued paid time off, as contemplated by C.R.S. § 8-4-109.

36. More than fourteen days have passed since Mr. Samson made his written demand for payment.

37. As of the date of this filing, TwentyEighty still has failed to pay Mr. Samson the compensation which he earned during his employment with TwentyEighty, which failure is willful and intentional.

38. Mr. Samson has suffered damages as a direct result of TwentyEighty's intentional conduct and failure to pay his earned and accrued compensation.

#### SECOND CAUSE OF ACTION
**(Breach of Contract)**

39. Mr. Samson incorporates herein by this reference each of the foregoing paragraphs and allegations in this Complaint as if set forth fully herein.

40. TwentyEighty and Mr. Samson reached a verbal agreement that if Mr. Samson did not voluntarily resign his employment prior to March 31, 2017, TwentyEighty would provide him with the severance and other benefits set forth in the SA.

41. Mr. Samson performed all of his obligations under this agreement by continuing to perform his duties as Executive Vice President and not voluntarily resigning his employment, until TwentyEighty rendered his further performance impossible by terminating his employment on March 17, 2017.

42. Through the 2016 Bonus Plan, the parties further agreed that Mr. Samson would receive a bonus of $75,000 if MHG's EMEA region attained revenues of at least $19,600,000 in calendar year 2016, plus 2% of the amount by which revenues exceeded that threshold.

43. Mr. Samson performed all of his obligations under the 2016 Bonus Plan.

44. TwentyEighty and Mr. Samson reached verbal agreements pursuant which, for each of the Fletcher Building Products, SABIC, and Spectris deals closed by Mr. Samson, TwentyEighty would compensate Mr. Samson with a Rolex watch.

45. Mr. Samson performed his obligations under this verbal agreement and successfully closed all three of these transactions.

46. TwentyEighty breached each of these agreements by failing to:

   a. pay Mr. Samson severance in the amount of $90,125.04;

   b. pay Mr. Samson $11,148.12;

   c. provide Mr. Samson with reasonable outplacement services;

   d. pay Mr. Samson a bonus of $75,000;

   e. pay Mr. Samson a bonus equal to 2% of the amount by which MHG EMEA's 2016 revenues exceed $19,600,000; and

   f. deliver three Rolex watches to Mr. Samson.

47. Mr. Samson has suffered damages as a result of TwentyEighty's breaches of contract.

**THIRD CAUSE OF ACTION**
**(Promissory Estoppel)**

48. Mr. Samson incorporates herein by this reference each of the foregoing paragraphs and allegations in this Complaint as if set forth fully herein.

49. TwentyEighty promised Mr. Samson that he would receive a bonus, based on the revenues he helped generate for the EMEA region.

50. TwentyEighty further promised that if Mr. Samson remained in its employment beyond December 31, 2016, then, upon the separation of Mr. Samson's employment, TwentyEighty would provide him with the severance and other benefits set forth in the SA.

51. TwentyEighty further promised Mr. Samson, on three separate occasions, that his successful performance on closing the Fletcher Building Products, SABIC, and Spectris deals, would be rewarded with Rolex watches.

52. TwentyEighty made these promises with the specific intent of inducing Mr. Samson to rely on these promises, such as by continuing his employment with TwentyEighty and increasing his efforts to close specific transactions.

53. Mr. Samson relied on TwentyEighty's promises, and that reliance has proven to his detriment.

54. Mr. Samson has suffered damages as a result of his reliance on TwentyEighty's broken promises.

WHEREFORE, Plaintiff, Curt Samson, respectfully requests that this Court enter judgment in his favor and against Defendant TwentyEighty, Inc., as follows:

(i) All wages owed, including:

    a. 2016 bonus;

    b. $10,399 in accrued paid time off;

    c. Additional bonuses promised for closing specific transactions;

(ii) All penalties allowed pursuant to C.R.S. § 8-4-109

(iii) All amounts and other benefits agreed to in the SA, including:

    a. $90,125.04 agreed upon severance package;

    b. $11,148.12 lump sum payment; and

    c. The value of reasonable outplacement services;

(iv) Attorney fees and other costs incurred in this action pursuant to the CWA; and

(v) Pre- and post-judgment interest at the statutory rate.

**Plaintiff Demands a Jury Trial on All Claims Triable to a Jury.**

Respectfully submitted this 23rd day of May 2017.

JESTER GIBSON & MOORE, LLP

s/ *[signature]*

Brian T. Moore, #28763
Niki Schwab, #48060
Jester Gibson & Moore, LLP
1999 Broadway, Suite 3225
Denver, CO 80202
(303) 377-7888
*Attorneys for Plaintiff*

Plaintiff's Address
Curt Samson
5665 W. Ottawa Ave.
Littleton, CO 80128